IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KATHRYN FULLER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 16-00363-KD-M |
| | ) | |
| WINN-DIXIE MONTGOMERY, LLC, | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant's motion for summary judgment (Doc. 59), Plaintiff's Response, Ex. 8 and motion to strike (Docs. 64, 65, 90) and Defendant's Reply and Opposition (Docs. 68, 92); Defendant's motion to exclude Plaintiff's experts (Docs. 66, 67), Plaintiff's Response (Doc. 83) and Defendant's Reply (Doc. 86); Plaintiff's motion to amend the Rule 16(b) Scheduling Order (Doc. 82) and Defendant's Response (Doc. 85); the May 31, 2017 hearing; Plaintiff's Supplement and Notice (Docs. 89, 91), Defendant's Response and motion to strike (Docs. 93, 94) and Plaintiff's Opposition (Doc. 95).[1]

**I.    WD's Motion to Exclude Experts**

WD moves to exclude Fuller's experts, Bowdie Isanhart (Isanhart) and Francis Galle (Galle), as untimely and prohibited under Daubert.  First, Fuller has conceded the exclusion of Isanhart such that WD's motion as to Isanhart is **MOOT**.  Second, Fuller's disclosure of Galle is untimely, such that WD's motion as to Galle is **GRANTED**.  As a result, Fuller's motion to amend the scheduling order is **MOOT**.

The Rule 16(b) Scheduling Order established Fuller's expert testimony disclosure

---

[1] The majority of Fuller's filings continue to be filed in single-spaced format. Fuller's counsel is advised to review the S.D.Ala. Local Rules, particularly L.R. 5(a)(1) which governs the format of filings, requiring that text be double-spaced within any page limitations provided.

deadline (including reports) as December 2, 2016. (Doc. 23). Fuller made no expert disclosures by December 2, 2016. Discovery closed on March 3, 2017. On March 14, 2017, more than three (3) months after the expert deadline and almost two (2) weeks after the close of discovery, Fuller's counsel deposed Galle as a Rule 30(b)(6) representative for (then defendant) Advanced Polybag, Inc. (Doc. 64-1 at 1). Counsel for Fuller asserts that he "tendered" Galle "during his deposition as an expert in safe bagging practices, and invited defense counsel to voir dire him, which was not done….." (Doc. 64 at 4; Doc. 82-6 at 2). However, at the deposition (and in response) WD immediately objected stating: "you're past your deadline for doing so. You're not going to take API's witness and co-opt him as an expert." WD has been objecting to Galle as an expert since the deposition and neither deposed Galle at that time as an expert, nor since.

At the May 31, 2017 hearing, counsel for Fuller suggested he did not realize Galle would be plaintiff's expert until the March 14th deposition. Only on April 5, 2017, in the midst of summary judgment briefing, did Fuller "g[i]ve notice" to WD of using Galle as an expert, via email from counsel. (Doc. 64-8 at 1). Fuller still failed to seek leave of Court to submit Galle as an expert on that date and/or to properly offer Galle as an expert under the federal rules. Only approximately six (6) weeks later, on May 25, 2017, did Fuller seek leave of Court to amend the Scheduling Order to designate her experts (*retroactively*). (Doc. 82).

Fuller asserts further that Galle will be an expert via video deposition at trial, and proffers his opinion as to: 1) the impropriety of placing glass jars and metal cans in a shopping bag together (improper bagging in his *personal* opinion); 2) the increased risk of damage to shopping bags if the boxes they are contained/shipped in are opened with a box cutter; and 3) the need to "build out walls" in a shopping bag with other boxed products to prevent collapse when/if other items are placed inside. However, Fuller admits that Galle cannot offer an opinion as to: 1) why

the shopping bag broke (causation); 2) WD's training materials and/or procedures; and 3) any industry standard which prohibits placing glass jars and metal cans in a shopping bag together. The analysis of WD's motion is two-fold: 1) the consequence of Fuller's violation of Rule 26; and 2) the merits of Fuller's motion to amend the Rule 16(b) Scheduling Order, to retroactively render the untimely expert designation, timely.

## A.    Rule 26

Pursuant to Rule 26(a)(2), parties are required to make expert disclosures "at the times and in the sequence that the court orders[]" -- via the Rule 16(b) Scheduling Order.[2] "Strict adherence to scheduling orders is important…: '[it] is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril...Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." Rogers v. Hartford Life and Acc. Ins. Co., 2012 WL 2395194, *1 at n.3 (S.D. Ala. Jun. 22, 2012). "Were the law otherwise, scheduling orders would be trivialized to the point of meaninglessness." Roberson v. BancorpSouth Bank, Inc., 2013 WL 4870839, *2 (S.D. Ala. Sept. 12, 2013). "The orderly, efficient passage of lawsuits through the federal courts demands that the Federal Rules…be followed, that the parties adhere to Scheduling Orders, and that parties act diligently to safeguard their rights and advance their positions…allowing…dilatory amendment would undermine each of these objectives, supplanting predictable procedural rules and rigorous scheduling deadlines with an *ad hoc,* chaotic, 'anything-goes' approach. This the Court is unwilling to do." Id. at 2. "The purpose of civil discovery is to create an orderly process by which a record may be generated to support trial

---

[2] Local Rule 26.1(a)(2) provides that "the parties shall disclose the information described in Fed.R.Civ.P. 26(a)(2–3) at the times and in a sequence established" by the Rule 16(b) Order "entered in each particular action."

or dispositive motions. Surprise is not favored." <u>Lavender v. Florida Gas Trans. Co</u>., 2003 WL 25682205, *2 (S.D. Ala. Jun. 30, 2003).

Additionally, per Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The determination of whether a party's failure to timely disclose an expert is "substantially justified" or "harmless"[3] lies in the broad discretion of the Court, after consideration of: 1) the unfair prejudice or surprise of the opposing party; 2) the party's ability to cure the surprise; 3) the likelihood and extent of disruption to the trial; 4) the importance of the evidence; and 5) the offering party's explanation for its failure to timely disclose. <u>Bradenton Beauty & Barber Academy, Inc. v. First Natl. Ins. Co. of Am</u>., 2017 WL 915242, *1 (M.D. Fla. Mar. 8, 2017). The burden of establishing that a failure to disclose an expert is either substantially justified or harmless rests on the party who fails to make the required disclosure. <u>Mitchell v. Ford Motor Co</u>., 318 Fed. Appx. 821, 824 (11th Cir. 2009). "[T]he sanction of exclusion is automatic and mandatory[]" unless such is established. <u>Cardona v. Mason and Dixon Lines, Inc.,</u> 2017 WL 2363647, *2 (S.D. Fla. May 31, 2017).

Here, the unfair prejudice or surprise to WD is significant. WD did not depose Galle as an

---

[3] "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there is [a] genuine dispute concerning compliance[;]" and 2) "[f]ailure ...[to make the required disclosure]… is harmless when there is no prejudice to the party entitled to the disclosure." <u>Ellison v. Windt</u>, 2001 WL 118617, *2 (M.D. Fla. Jan. 24, 2001). <u>See also Street v. Drury Inns, Inc</u>., 2009 WL 3784330, *2 (S.D. Ala. Nov. 10, 2009). The Advisory Committee Notes to the 1993 amendment to Rule 37(c) provides examples of "harmless" violations: "e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party ..." "This commentary strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." <u>Burney v. Rheem Mfg. Co., Inc</u>., 196 F.R.D. 659, 692 (M.D. Ala. 2000) (citations omitted).

expert, only as a Rule 30(b)6) witness.  WD has had no opportunity to prepare and then cross-examine Galle as an expert.  WD has had no opportunity to secure a rebuttal expert.  Indeed, at this juncture – with summary judgment pending and after discovery has closed – WD has little ability to cure Fuller's expert surprise.  Additionally, allowing Galle as an expert would wholly disrupt the timeline in this case as well as the trial setting (likely prompting an entirely new briefing schedule, new motions for summary judgment, etc), as time would likely need to be allotted for WD to re-depose Galle in that capacity and perhaps conduct further discovery.

Moreover, the importance or significance of Galle's opinion and testimony is questionable as he testified that *he could offer no opinion as to the cause of the bag failure*.  Indeed, Galle does not known why the bag failed (Doc. 66-1 at 18) and he has no opinion on whether the groceries were properly bagged (*i.e.*, whether Heath, WD's employee, improperly bagged the groceries) (Doc. 66-1 at 20).

Further, Fuller's explanation does not provide reasonable justification for missing the deadline and for failing to timely disclose.  Fuller's claim that counsel just "made a mistake" is insufficient.  And to the extent counsel suggests – instead -- that he "had no way to know" of Galle as an expert until the March 2017 deposition, the Court cannot agree.  Fuller had the entire duration of discovery to ascertain any experts in support of her case and properly disclose them.

In sum, Fuller has not established that her counsel's failure to timely disclose Galle as an expert is substantially justified or harmless.  Rule 37(c)(1)'s self-executing sanction dictates that Galle cannot be used as an expert.

**B.**    **Rule 16(b) Scheduling Order**

After summary judgment and after WD moved to exclude Galle, Fuller filed a motion to amend the Rule 16(b) Scheduling Order.   Per Rule 16(b)(4), "[a] schedule may be modified only

for good cause **and** with the judge's consent." (emphasis added). Rule 16(d) provides the scheduling order "controls the course of the action unless the court modifies it," and Rule 16(f) prescribes sanctions for noncompliance. Case law makes clear that the "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).[4]

The Rule 16(b) Scheduling Order clearly established the deadlines that govern this case. Fuller did not seek leave of Court to amend those deadlines. Fuller did not seek leave of Court to do so when she submitted her expert's opinions in response to summary judgment. Only on May 25, 2017, did Fuller first seek leave of Court to amend the Scheduling Order -- *to retroactively render the expert designation timely AFTER filing a response to the pending motion for summary judgment.* However, Plaintiff has not attempted to make a showing of diligence that might satisfy the Rule 16(b)(4) requirement for modifying the scheduling order. There is no indication that despite diligence she was unable to locate an expert in a timely manner. Hughes v. Stryker Sales Corp., 2010 WL 1961051, *6 (S.D. Ala. May 13, 2010). Fuller has failed to demonstrate good cause for missing the Court's deadlines.

## C.   Conclusion

As such, WD's motion to exclude is **GRANTED in part** and **MOOT in part** as follows: that portion of the motion concerning Isanhart is **MOOT** due to Fuller's concession; that portion of the motion based on the untimely disclosure of Galle is **GRANTED;** and that portion of the motion based on substantive Daubert grounds is **MOOT**. As a result, the motion to amend the

---

[4] To establish good cause for an extension, the party seeking such must have been diligent; if not "the inquiry should end." Will–Burn Recording & Pub. Co. v. Universal Music Group Records, 2009 WL 1118944, *2 (S.D. Ala. Apr. 27, 2009). See also, Rogers v. Hartford Life and Acc. Ins. Co., 2012 WL 2395194, *2 (S.D. Ala. Jun. 22, 2012). "[D]iligence, not lack of prejudice, is the key[,]" and an allegation that defendant will not be prejudiced if amendment is permitted now cannot help plaintiff in the absence of a threshold showing of diligence." Id. at *3.

scheduling order is **MOOT**, and those portions of Fuller's opposition to WD's motion for summary judgment which rely on the expertise of Isanhart and/or Galle will not be considered.

## II.    Motion for Summary Judgment

### A.    Findings of Fact[5]

This case stems from Plaintiff Kathryn F. Fuller's (Fuller) June 11, 2014 shopping trip to a Winn Dixie grocery store in Mobile, Alabama, where she purchased two cans of soup, a jar of spaghetti sauce and other items.  (Doc. 59-3 at (Dep. Fuller at 25)).  Fuller purchased her groceries, which were then bagged by WD employee Julia Heath (Heath).  Fuller exited the store and as she was leaving, one of the bags she was carrying (containing the soup cans and spaghetti jar) allegedly failed.  This resulted in the glass spaghetti jar shattering, severely slicing her left foot.  According to Fuller, "I hear[d] the glass shatter on the concrete, and…I was bleeding…" (Doc. 59-3 (Dep. Fuller at 26)).  As alleged, Fuller was injured, underwent surgery, experiences continued problems and suffers from permanent limitations.

On June 7, 2016, Fuller initiated this action against Defendants Winn-Dixie Stores, Inc. and Advanced Polybag, Inc. in the Circuit Court of Mobile County, Alabama (CV 16-901162), and on July 1, 2016 amended the complaint to add Defendant Winn-Dixie Montgomery, LLC. (Doc. 1-1).  Fuller's initial claims against Defendants consisted of negligence and wantonness, premises liability and negligent, reckless and wanton hiring/supervision/training. (Doc. 1-1).  On July 11, 2016, the Winn-Dixie Stores defendants removed[6] the case to this Court on the basis of

---

[5] On summary judgment, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004).

[6] Defendant Advanced Polybag, Inc. consented to removal.  (Doc. 1-3).

federal subject matter diversity jurisdiction. On July 19, 2016, this Court conducted a *sua sponte*

preliminary screening of the Notice of Removal, assessing federal diversity jurisdiction. (Doc.

5). On August 12, 2016, this Court ruled that "it is more likely than not that the amount in

controversy in this case exceeded the $75,000 minimum at the time the Notice of Removal was

filed." (Doc. 12 at 3). Winn-Dixie Stores, Inc. was later dismissed as a defendant, leaving only

Winn-Dixie Montgomery, LLC (WD) as the defendant. (Doc. 15). Fuller's filed an amended

complaint (with written consent of defendants) to add breach of warranty and AEMLD claims

was granted. (Doc. 21). WD has now moved for summary judgment. (Doc. 59).

**B.**    **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is
> genuinely disputed must support the assertion by:
>
>     **(A)** citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the motion only),
> admissions, interrogatory answers, or other materials; or
>
>     **(B)** showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce admissible
> evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party
> may object that the material cited to support or dispute a fact cannot be presented
> in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it
> may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or
> oppose a motion must be made on personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

## C.   Motions to Strike

### 1.   WD's Motion to strike (Doc. 93)

WD filed a motion to strike Section III of Fuller's Brief (third-party beneficiary claim) and Exhibits 3 and 6 (Docs. 89 (Pages 17-20), 89-3, 89-6), related to the breach of implied warranty claim. For the third-party beneficiary claim (Doc. 89 at 1, 17-20), Fuller cannot raise new claims on summary judgment[7] and is limited to the allegations of the operative complaint,

---

[7] Which applies to any other "new" claims or arguments Fuller attempts to assert. Fuller's suggestion that this Court invited her to do so, via Supplemental briefing (which was clearly narrowly focused), is not well received.

which did not include this claim.  (Doc. 22).  See, e.g., GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1258 and note 27 (11th Cir. 2012) ("[i]t is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase[]"); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[a] plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment[]"; King v. ST Aerospace Mobile, Inc., 2013 WL 2635926, *8 (S.D. Ala. Jun. 11, 2013) (plaintiff cannot amend to add new causes of action via summary judgment).  As noted in Joseph M. Still Burn Ctrs., Inc., Liberty Mut. Ins. Co., 2010 WL 55471, *13 (S.D. Ga. Jan. 6, 2010):

> ….[Plaintiff's]…third party beneficiary claim is a "new claim" within the meaning of *Gilmour*, such that an amendment is required in order for the claim to be addressed on summary judgment. Nowhere in the Complaint does Plaintiff state the words "third party" or "third party beneficiary," or in any way indicate that it is suing…[based on such a claim]. The complete lack of notice of a third party beneficiary claim is further evidenced by the fact that Defendant did not address such a claim in its initial motion for summary judgment….."[l]iberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Gilmour*, 382 F.3d at 1315.

> Not only does the Complaint provide no real notice of a third party beneficiary claim, but there is also no conceivable way to read Plaintiff's "breach of contract" claim as simultaneously asserting both a claim for breach of implied contract and a third party beneficiary claim…..Moreover, a plaintiff cannot assert a claim for "breach of contract," and then wait until summary judgment to inform the defendant as to whether it is asserting a claim for breach of implied contract, a third party beneficiary claim…. without ever having amended its complaint; to permit this method of asserting claims, would be to ignore the spirit and clear language of *Gilmour*: "Efficiency and judicial economy require that the liberal pleading standards ... are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint ...." *Id*. at 1315.

> …Plaintiff has improperly asserted a new third party beneficiary claim in its Response to Defendant's Motion for Summary Judgment. The proper procedure for Plaintiff to assert a new claim is to timely seek to amend the complaint. In light of Plaintiff's failure to do so, Plaintiff's third party beneficiary claim cannot be considered on summary judgment.

As such, any claims and allegations raised by Fuller for the first time via summary judgment briefing are not properly before the Court and will not be substantively addressed or considered.

Thus, WD's motion to strike the third-party beneficiary claim is **MOOT.**[8]

As for Exhibits 3 and 6, since 2010 and per Rule 56 of the <u>Federal Rules of Civil</u> <u>Procedure,</u> motions to strike "material" on summary judgment are inappropriate.  Rather, Rule 56(c)(2) provides that "[a] party ***may object*** that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence[]" meaning that:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. ***There is no need to make a separate*** ***motion to strike***. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, *Adv. Comm. Notes*, "Subdivision(c)" (2010 Amendments) (emphasis added). As such, the Court construes WD's motion to strike the exhibits as Objections.

WD objects to "Exhibit 3"  (Doc. 89-3) -- portions of Galle's deposition (Fuller's expert) -- as untimely.  WD's Objection is **MOOT** given the Court's ruling on WD's motion to exclude experts *supra* and "Exhibit 3" will not be considered on summary judgment.

WD also objects to "Exhibit 6" (Doc. 89-6) – the entirety of Fuller's Doc. 89-6 (Dep. Fuller at Pages 1, 24-27, 63) – as untimely, as submitted outside the April 14, 2017 deadline for summary judgment briefing per Doc. 60.  The summary judgment briefing order provided Fuller until April 14, 2017 to oppose WD's motion.  (Doc. 60). The Court order specified, in relevant part, that "[a]ny party opposing the motion must respond in the manner set out in Rule 56 of the <u>Federal Rules of Civil Procedure</u> and Civil L.R.…56[]" by said date, and "a plaintiff against

---

[8] The <u>Federal Rules of Civil Procedure</u> delineate the general use of a motion to strike: "Upon motion made by a party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). WD's motion is not a request to strike an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

whom a motion for summary judgment is filed must oppose that motion by response as provided in the rules." (Id.)  Local Rule 56(b) provides that "[u]nless the Court orders otherwise, the nonmovant must file any response in opposition to the motion within twenty-eight (28) days of service of the motion. The non-movant's brief must include: (1) all facts relied upon, each supported by a specific, pinpoint citation to the record; (2) all challenges to the movant's asserted facts; and (3) argument supported by legal authority as appropriate. ***The non-movant must also file all evidence relied upon. No other supporting documents may be filed absent Court order***." Local Rule 56(e) provides "[t]he Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding the motion for summary judgment."

On April 14, 2017 Fuller filed her response to summary judgment with exhibits (evidence upon which she relies).  (Docs. 64, 65).  Fuller failed to submit any of her deposition testimony in opposition to WD's motion. However, the court sees no prejudice to WD in the late filing. This is especially true since WD submitted Pages 1 (in full) and Pages 25 and 26 (in redacted form) of Fuller's deposition in support of its motion (Doc. 59-3).  As such, WD's Objection is **OVERRULED.**

2.    **Fuller's motion to strike (Doc. 90)**

Fuller moves to strike portions of WD's motion for summary judgment, specifically "Statements" #12, 24, 26 and 36 (presumably meaning WD's Facts).  WD opposes the motion as untimely and an improper attempt to reopen summary judgment briefing.

On April 14, 2017 Fuller filed her response to summary judgment with exhibits.  (Docs. 64, 65).  On May 15, 2017, this Court noted that the summary judgment briefing was "already complete" such that a ruling on same would not be suspended or held in abeyance, scheduling a May 31, 2017 hearing to address, among other pending motions, the summary judgment.  (Doc.

76).  Following the hearing, the Court ordered limited briefing by Fuller on the singular issue of her breach of implied warranty claim.  (Doc. 87).  Fuller submitted additional briefing, and filed a motion to strike "Statements" #12, 24, 26 and 36 in WD's summary judgment motion.

The Federal Rules of Civil Procedure delineate the general use of a motion to strike: "Upon motion made by a party ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).  Fuller's motion is not a request to strike an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Therefore the motion to strike is **DENIED**.

## D.      **Claims**[9]

Fuller concedes that her claims for wantonness (including reckless/wanton hiring, training and supervision), premises liability, breach of express warranty and AEMLD are due to be dismissed.  (Doc. 64 at 10, 14, 17).  As such, WD's motion is **GRANTED** as to those claims. The Court now turns to the remaining three (3) claims and reminds the parties "[t]he onus is on the party opposing summary judgment to submit affirmative evidence demonstrating that there exists a genuine issue of material fact regarding an essential element of the claim….The court is not required to distill every potential argument that could be made…" Katrensky v. U.S., 732 F. Supp.2d 1194, 1203 (M.D. Ala. 2010) (internal citations omitted).

---

[9] Because this action is pending in federal court on the basis of diversity, the substantive law of Alabama applies.  Employers Mut. Cas. Co. v. Mallard, 309 F.3d 1305, 1307 (11th Cir. 2002).

Additionally, WD has submitted deposition pages in such a highly redacted form that the context and substance of the testimony is unknowable.  For instance, only the deponent's answers are shown, not the questions posed; or only a question with an answer with the question being unclear as to the subject matter (e.g., Doc. 59-6 at 3 (Dep. McLaughlin at 158, 187, 230, 235, 243, 265, 266)).  Such evidentiary submissions do not allow for substantive Court review and as a result, have not been considered on summary judgment.

1.    <u>Negligence</u>[10]

Fuller's Complaint alleges negligence based on, Heath's (WD's bagger/cashier) actions. Specifically Fuller alleges that WD "negligently loaded the subject failed bag….[and] knew, or should have known, that injury was likely to occur as a result of the improper loading of the subject failed bag…..As a result…Plaintiff was injured…." (Doc. 22 at 3 at ¶13-16).[11]

On summary judgment Fuller asserts that there is a genuine issue of material fact as to whether that the combination of items the cashier/bagger placed in her grocery bag created an "unsafe bag" to transport her groceries.    In support, Fuller asserts: 1) she is similar to the plaintiff in <u>Housing Auth. of Bham Dist v. Morris</u>, 244 Ala. 557 (Ala. 1943), as she had a right to rely on WD to provide "safe bags" to transport groceries (because a tenant has a right to rely on a landlord to furnish reasonably safe appliances); and 2) based on implied warranty case law "[l]iability still rests on" WD "for injuries caused….for the failure of their grocery bags to perform as intended[]" per <u>Skelton v. Druid City Hosp. Bd.</u> 459 So.2d 818 (Ala. 1984).  (Doc. 64 at 10-11).

Fuller's conflation of landlord-tenant and implied warranty case law with that of general negligence does not support her case.  For her negligence claim to survive summary judgment, Fuller must prove: 1) WD owed her a duty; 2) WD breached that duty; 3) she suffered a loss/injury; and 4) WD's negligence was the actual and proximate cause of her injury. <u>Palmer v.</u>

_____

[10] Fuller alleges that she was injured by WD's conduct.  Thus, her negligence claim does not sound in premises liability: "courts decide whether the appropriate framework for analyzing duty is traditional negligence or premises liability by reference to whether the injury was caused by the landowner's affirmative conduct or by a condition of the premises." <u>Eva Costa v. Sam's East, Inc.</u>, 2012 WL 3288680, *3 (S.D. Ala. Aug. 9, 2012).

[11] Fuller attempted to amend her claim at the hearing to allege – also -- that the actions of WD employees in general, via improperly opening boxes containing the plastic bags with box cutters (with reference to the Deposition of McLaughlin) caused the bag to fail, and caused her injury. Fuller is limited to the allegations of her complaint and cannot amend her complaint in response to summary judgment.  <u>See</u> <i>infra</i> Section II.C.1.  As such, Fuller's box cutter allegation is not properly before the Court and will not be considered on summary judgment.

Infosys Techs. Ltd, Inc., 888 F.Supp.2d 1248, 1255 (M.D. Ala. 2012); QORE, Inc. v. Bradford Bldg. Co., Inc., 25 So.3d 1116, 1123 (Ala. 2009); Martin v. Arnold, 643 So.2d 564, 567 (Ala. 1994); Lollar v. Poe, 622 So.2d 902, 905 (Ala. 1993); John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375, 379 (Ala. 1990). Proximate cause is "an act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces the injury and without which the injury would not have occurred." Crowne Invs., Inc. v. Bryant, 638 So.2d 873, 877-878 (Ala. 1994). It is "conduct [that] naturally and probably brought about the harm and…[that] would not have happened without the conduct." *APJI 33.00 Causation-Definition*.

It is undisputed that Fuller was injured and the court will assume that WD owed a duty to properly bag the groceries. However, Fuller has failed to show the existence of genuine issues of material fact that WD's presumed negligent bagging was the actual and proximate cause of her injury.

At the May 31st hearing Fuller conceded that *she does not know what happened –* whether the injury was caused by Heath's improper bagging, a defect in the bag, Fuller's jiggling of the items while carrying the bag causing the items to break against one another, *or some other reason*. The evidence reveals that Fuller testified that she has no idea why the grocery bag broke. (Doc. 59-3 (Dep. Fuller at 30)). Fuller does not have any knowledge as to whether the bag was overfilled or improperly filled, as "I don't think I paid attention to her actually putting items in the bag[]" and she is "not sure" she knows of anything Heath did incorrectly to cause her injury. (Id. (Dep. Fuller at 31, 33-34, 41-42)). Fuller does not know if there was anything wrong with the bag and/or anything WD could have done to keep the incident from happening. (Id. (Dep. Fuller at 34, 42)). Finally, Heath testified that she did not see any problems from loading the bag with less than five (5) pounds of groceries, which is what she did in this instance. (Doc. 59-7

(Dep. Heath at 64-65)).   And other than the video, which fails to support Fuller's contention that improper bagging caused the bag to break resulting in injury to her, Fuller has submitted no evidence to support causation.

To recover for negligence Fuller must show that WD's breach was *the proximate and actual cause* of her injury.  Fuller has presented *possibilities* to the Court for her injury.  Fuller's speculation – *and theories in the alternative* -- as to the cause of her injury is insufficient to survive summary judgment.  See, e.g., Giles, 574 Fed. Appx. at 984 (finding similarly); Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("unsupported speculation...does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment[]"); Brantley v. International Paper Co., 2017 WL 2292767, *25 (M.D. Ala. May 24, 2017)[12] ("plaintiffs cannot proceed to trial based on a mere hunch….There is simply no evidence -- beyond speculation…plaintiffs have not identified an evidentiary basis connecting the mill's emissions to the….damage….it is just as likely as not that something other….caused the….damages…. *See So. Ry. Co. v. Dickson*, 100 So. 665, 669 (Ala. 1924) ('Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause[]')"); Ex Parte Mobile Power & Light Co., 810 So.2d 756, 759-760 (Ala. 2001) (emphasis in original) ("[a]s a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions but not deducible from them as a reasonable inference. *There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without*

---

[12] *Cf.* Kearns v. Sealy, 496 F.Supp.2d 1306, 1317 at note 16 (S.D. Ala. Jul. 16, 2007).

*selective application to any one of them, they remain conjectures only*[]"); <u>Ex parte Harold L. Martin Distrib. Co., Inc</u>., 769 So.2d 313, 315-316 (Ala. 2000) ("[t]he fatal defect…is that she failed to present evidence indicating that the…ways[] in which she says [defendants]…were, in any way, involved in a chain of causation resulting in her fall….In fact, *she could not identify the cause*[]").[13]  Fuller has failed to show that Heath's negligence (via improper bagging) was the *proximate and actual cause* of her injury.  Thus, WD's motion is **GRANTED** as to negligence.


### 2.    <u>Negligent supervision and training</u>

In the Complaint Fuller alleges that WD negligently hired, supervised and trained Heath because WD has a duty to hire, supervise and/or train their employees to: "make sure that there are not hazards in the…grocery transportation materials…so as not to cause any unreasonable dangers for customers and/or persons who would eventually utilize" them; "properly inspect…grocery transportation materials…so that there are no dangerous conditions…not readily discoverable to their patrons…[;] and "to inspect and keep…grocery transportation materials….free and clear of dangerous conditions…"[14]  (Doc. 22 at 4-5).  On summary judgment and at the May 31, 2017 hearing, Fuller narrowed her claim to one for WD's failure to train Heath, based on her alleged failure to complete "hands-on" training in the store and her

---

[13] <u>Harold L. Martin,</u> 769 So.2d at 315-316: "Alabama juries are not permitted to speculate as to the cause of an accident. *See Brookwood Medical Ctr. v. Lindstrom,* 763 So.2d 951 (Ala. 2000); *Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala.1987) ("[w]hen evidence points equally to inferences that are favorable and to inferences that are unfavorable to the moving party, the evidence lacks probative value; and the evidence may not be used to support one inference over another because such use is mere conjecture and speculation[]"). Because she could not say how….the…ramp….contributed to her accident, Williams failed to present evidence sufficient to overcome…summary judgment…In *Tice,* as in this case, the plaintiff "could not state the cause of her fall…. Because she could only speculate as to the cause of the accident…."

[14] Because Fuller has not asserted any arguments regarding "contaminants" – even though such is alleged in this section of the Complaint – the Court considers that argument/claim abandoned by Fuller.

allegedly forged signature on a WD training form.

As set forth in <u>Knox v. U.S.</u>, 978 F.Supp.2d 1203, 1214 (M.D. Ala. 2013) (internal citations omitted):

> ….[i]n the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice....

<u>See</u> <u>also</u> <u>Southland Bank v. A&A Drywall Supply Co., Inc.</u>, 21 So.3d 1196, 1214-1215 (Ala. 2008) (same).  "A mistake or single act of negligence on the part of an employee does not establish incompetency: '[n]egligence is not synonymous with incompetency. The most competent may be negligent…*But one who is habitually negligent may on that account be incompetent.*'"  (<u>Id</u>. at 1216 (internal citations omitted, emphasis in original)).  Fuller must prove: 1) Heath committed a tort under Alabama law; 2) WD had actual notice of this conduct or would have if it had exercised due and proper diligence; and 3) WD failed to respond to this notice adequately.  <u>Bennett v. Nationstar Mortg., LLC</u>, 2015 WL 5294321, *7 (S.D. Ala. Sept. 8, 2015). <u>Thrasher v. Ivan Leonard Chevrolet, Inc.</u>, 195 F.Supp.2d 1314, 1320 (N.D. Ala. 2002); <u>Humana Med. Corp. of Ala. v. Traffanstedt</u>, 597 So.2d 667, 669 (Ala. 1992).

In an endeavor to meet her burden to establish negligent supervision and training, Fuller points to evidence that Heath failed to complete required WD bagging training, WD falsely documented that such training was complete and Heath failed to follow WD's bagging rules. However, even assuming Heath failed to complete bagging training and WD forged her signature, Fuller has not established, as explained *supra,* that Heath committed an Alabama tort.

"[A]n employer may not be held directly liable on a theory of negligent…training because no tort occurred. *Jones Express, Inc. v. Jackson*, 86 So.3d 298, 303–04 (Ala.2010) (per curiam)." Kurtts v. Chiropractic Strategies Group, Inc., 481 Fed. Appx. 462, 469 (11th Cir. 2012). Further, Fuller has failed to establish that WD had knowledge of incompetence and/or wrongful conduct by Heath – much less "affirmative proof" of same. See generally, Katrensky v. U.S., 732 F.Supp.2d 1194, 1204 (M.D. Ala. 2010) (granting summary judgment due to plaintiffs' failure to provide any facts or evidence in support of a negligent training claim); Hester v. Brown, 512 F.Supp.2d 1228 (S.D. Ala. 2007) (granting summary judgment due to plaintiff's lack of evidence as to knowledge of employee's incompetence); Jones Express, Inc. v. Jackson, 86 So.3d 298 (Ala. 2010) (reversing a plaintiff's jury verdict because the jury determined the employee had not committed any negligent act).  WD's motion is **GRANTED** as to the claim of negligent supervision and training.

### 3.    Breach of Implied Warranty[15]

In the Complaint, Fuller's breach of implied warranty claim is rooted in the assertion that WD sold her the grocery bag (i.e., that WD is a "seller" and "merchant" of grocery bags):

> 27. Plaintiff was sold the subject grocery bag by the Defendant[] and Plaintiff was a purchaser of the grocery bag under the Alabama Uniform Commercial Code.

> 28. Defendant Winn-Dixie….impliedly warranted that the subject grocery bag, which broke and caused a glass jar to fall from the same, shatter and severely lacerate Plaintiff's foot, was merchantable and fit for the ordinary purposes for which such goods are used, when Defendant[] sold the subject grocery bag. Said Defendant[] were merchants with respect to grocery bag.

> 29. Said Defendant[] breached the… implied warranty in that the subject grocery bag broke while holding groceries causing a glass jar to fall from the same, shatter and severely lacerate Plaintiff's foot. Therefore, the subject grocery bag

---

[15] Any submissions as to Fuller's untimely experts Galle and Isanhart have been excluded from consideration.  Likewise, as noted *supra*, Fuller's third-party beneficiary claim is not properly before the Court.

was not merchantable as warranted.

    30. As a proximate result of said breach… Plaintiff suffered injuries….

(Doc. 22 at 5).

On summary judgment, WD contends that Fuller's claim fails because there was no sale of goods (WD did not sell her the bag), there was no contract between Fuller and WD for the bag, and WD provides bags "gratuitously to patrons to assist them in the transportation of their groceries."  (Doc. 59 at 3, 15 and Doc. 68 at 10 (citing Doc. 59-5 (Aff. McLaughlin)). Specifically, "Winn-Dixie provides customers with plastic grocery bags for the transportation of their groceries[]" and "does not charge its customers for grocery bags."  (Id.)

In opposition to summary judgment and in her supplemental briefing,[16] Fuller relies on the Alabama Code sections for merchantability[17] and fitness for a particular purpose[18], alleging

---

[16]  With the Supplement Fuller also submits _new_ evidence including a "Raw Materials Supply Agreement" (as amended) between WD and the bag supplier/manufacturer.  (Doc. 89-1; Doc. 89-2). (Doc. 89-1 at 14 at ¶14.7; Doc. 89-2 at 2 at Section III).  The language Fuller cites in the Agreement, which is governed by Florida law, deals with Advanced Polybag's warranties concerning merchantability and fitness for use – not any warranties on WD's part.  Further, as noted _supra_, Fuller had the opportunity to submit any and all evidence in support of her claim on April 14th and did not submit this Agreement.  The Court's order concerning the Supplement was limited to Fuller briefing: "1) how Winn Dixie is a seller relative to the breach of implied warranty claim; and 2) upon what code sections (statutes) Plaintiff relies for its breach of implied warranty claim."  (Doc. 87 at 1).  Fuller was not given leave to submit new evidence.  As such, the Agreement is not properly before the Court.

[17]  Section 7-2-314(2)(c) provides: "[g]oods to be merchantable must be at least such as…(c) are fit for the ordinary purpose for which such goods are used…"  As set forth in Ex parte General Motors Corp., 769 So.2d 903, 911-912 (Ala. 1999): "The implied warranty of merchantability is found in § 7-2-314(1)…which provides: "Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Subsection (2)(c) of that Code section provides that to be considered merchantable, goods must be "fit for the ordinary purposes for which such goods are used."…"[t]o establish his claim of breach of the implied warranty of merchantability…[a plaintiff]…must '"prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach."

[18]  Section 7-2-315 provides further: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

WD breached both. (Doc. 64 at 17).  Fuller contends that WD is a "seller" and "merchant" as defined in §§ 7-2-103(1)(d)("'Seller' means a person who sells or contracts to sell goods.") and 7-2-104(1)("'Merchant' means a person who deals in goods of the kind or otherwise … holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction…."). Fuller relies on <u>Alabama Powersport Auction, LLC v. Wiese</u>, 143 So.3d 713 (Ala. 2013) (citing <u>Powers v. Coffeyville v. Livestock Sales Co.</u>, 665 F.2d 311 (10th Cir. 1981)) and <u>Bradford v. Northwest Ala. Livestock Assn.</u>, 379 So.2d 609, 611 (Ala. Civ. App. 1980) to assert that Alabama case law interprets the terms "seller" and "merchant" broadly.  (Doc. 89 at 6-8).

Fuller also asserts that WD entered into a contract with her for the sale of the bag as defined in § 7-2-106(1)("A 'Sale' consists in the passing of title from the seller to the buyer for a price.").  Fuller contends "Winn-Dixie admits it supplied" her with a bag "as part of Winn-Dixie's sale of groceries….Therefore, Winn-Dixie is a 'seller' of the grocery bags under Alabama law."  (Doc. 64 at 16).

Fuller also argues WD is a "seller" and "merchant" of the bags as per <u>Skelton v. Druid City Hosp. Board</u>, 459 So.2d 818 (Ala. 1984).  In <u>Skelton,</u> the court concluded that the hospital board was a seller and a merchant under the Alabama Code with regard to a suturing needle that broke off into plaintiff during a procedure and remained lodged inside.  359 So.2d 818.  The Court held, in light of the Official Comment to Section 7-2-313, that the warranty sections of Article 2 "need not be confined to sales contracts" and that 7-2-315 should be broadly interpreted to include transactions in which there is no actual transfer of title (e.g., rental and lease transactions).  <u>Id</u>. at 821.   From this holding, Fuller argues that if the hospital in *Skelton* is merchant with regard to the needle "then Winn-Dixie under *Skelton*" is as well "with regard to

the furnishing of grocery bags" to her.  (Doc. 64 at 16).  Fuller also cites <u>Caldwell v. Brown Serv. Funeral Home</u>, 345 So.2d 1341 (Ala. 1977) (the court concluded that an implied warranty arose because a funeral home provided both a service (the funeral services) and a product (a casket), and billed plaintiff for both products and services), suggesting an implied warranty exists because Fuller's grocery trip was a "mixed" or "hybrid" transaction (combination of sale/service).

As summarized in <u>Taylor v. StrongBuilt, Inc.</u>, 2011 WL 4435601, *5-6 (S.D. Ala. Sept. 23, 2011) (footnote omitted):

> "The warranty of fitness for a particular purpose 'is implied if: (1) the seller has reason to know the buyer's particular purpose; (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish the appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment.'" *Tucker v. General Motors Corp.,* 769 So.2d 895, 902 (Ala.Civ.App.1998), *aff'd in part, rev'd in part, Ex parte General Motors Corp.,* 769 So.2d 903 (Ala.1999) (citations omitted). In order to establish a claim for breach of the implied warranty of merchantability, plaintiffs "must prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach." *Tucker*, 769 So.2d at 901.
>
> ***
>
> Under Alabama law, [ ] the Taylors' must prove that the breach of these implied warranties was the proximate cause of their injuries. *Cain v. Sheraton Perimeter Park South Hotel*, 592 So.2d 218, 221 (Ala.1991) ("Under ... § 7–2–314, the defect or lack of merchantability, of course, must be proved to have been the proximate cause of the plaintiff's injuries."); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1289 (M.D.Ala.2001) ("In an action for breach of the implied warranty of fitness for a particular purpose, the Plaintiffs must prove" damages proximately resulting from that breach.") (citation omitted)….

In sum, Fuller must prove: 1) the existence of the implied warranty; 2) a breach of that warranty; and 3) damages proximately resulting from that breach.  <u>Avery v. Cobra Enterp. of Utah, Inc.</u>, 2013 WL 2352320, *3 (N.D. Ala. May 23, 2013).  "Because this case is at the summary judgment stage…plaintiff[] only ha[s] to demonstrate that there is at least an open question of material fact as to each of these elements." <u>Id</u>.  The first step is to determine whether there is a factual basis for finding the existence of an implied warranty.  <u>Id</u>.

As a threshold filter for this first step, "Section 7–2–314 and § 7–2–315 both apply only to the 'seller' of a product." Johnson v. Anderson Ford, Inc., 686 So.2d 224, 228 (Ala. 1996). See also Ex parte General Motors Corp., 769 So.2d 903, 910 (Ala. 1999).   Section 7-2-103(1)(d) defines "seller" as "a person who sells or contracts to sell goods." The statute defines a "sale", as "the passing of title from the seller to the buyer for a price (Section 7-2-401)." Ala. Code 7-2-106(1). Fuller must also be a "buyer:" "a person who buys or contracts to buy goods." Ala. Code. § 7-2-103(1)(a).

Additionally, for § 7-2-314(1) merchantability, WD must be shown to be a "seller" -- meaning "a merchant with respect to goods of that kind." The Code defines "merchant" as one who sells *goods of the kind involved*, by its occupation holds itself out as having skill as to *those goods*, or to whom knowledge of *the goods* may be attributed by employment of an agent who holds himself out as having such knowledge or skill. Ala. Code § 7–2–104(1).  Thus, "the jury must be reasonably satisfied not only that the defendant sold the article in question to the plaintiff, but also that the seller was 'a merchant with respect to goods' of the same kind as the article sold to plaintiff." Storey v. Day Heating & Air Conditioning Co., Inc., 319 So.2d 279, 281 (Ala. Civ. App. 1975).

For § 7-2-315 fitness for a particular purpose, this is "distinguished from that for merchantability in that goods might well be suited for their normal uses and yet not be suitable for some particular purpose." J. Marsh, *Alabama Law of Damages* §32:8 Implied Warranties (6th Ed. Feb. 2017 Update). This warranty "arises upon a sale in which the seller has reason to know the buyer's particular purpose, the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods, and the buyer, in fact, relies upon the seller's skill or judgment…This warranty liability normally arises only where the seller is a

merchant." <u>Id</u>. It "is 'narrower, more specific, and more precise' than the implied warranty of merchantability[]'…" <u>Chase v. Kawasaki Motors Corp., U.S.A</u>., 140 F.Supp.2d, 1280, 1289 (M.D. Ala. 2001).

Fuller admits the absence of an Alabama case directly addressing whether a business providing a free means of transporting purchased goods is a "seller" or "merchant" under implied warranty theories. (Doc. 89 at 20).  However, the assessment of whether such a business is a "seller" or "merchant" may not hinge on the free means of transporting goods, but on patronage.

Specifically, Fuller asserts that she was "required to pay for the groceries in order to take possession and title of the grocery bag[]" and that WD's "business of selling groceries to customers…include grocery bags as part of the total transaction for the goods."  (Doc. 89 at 8, 9).  Fuller contends that she:

> purchased the grocery bag at the time she paid for the groceries.  "Purchase" is defined as: "[t]aking by sale…gift, or any other voluntary transaction creating an interest in property". Section 7-1-201(b)(29). The price of the grocery bag does not have to be payable in money.  Section 7-2-304(1) provides "[t]he price can be made payable in money or otherwise"…Fuller was required to pay for the groceries in order to take possession and title of the grocery bag.  Accordingly, Winn-Dixie is a seller and a merchant with respect to the bag.

Fuller has provided no evidence establishing that WD charges for the bags.  However, a factual issue exists due, in part, to WD's own description of how, and to whom, it supplies the "free" plastic grocery bags. WD repeatedly asserts that it *provides* "free" bags to its "patrons" and "customers."  (Doc. 59 at 3, 15 and Doc. 68 at 10 (citing Doc. 59-5 (Aff. McLaughlin); Doc. 94 at 4, 5).  This suggests that free bags are provided by WD, in exchange for patronage of the store (i.e., the purchasing of the store's goods).  Notably, there is no evidence before the Court – and WD has not asserted -- that WD provides "free" bags to non-patrons or non-customers (individuals who enter the store but do not purchase groceries).  Based on WD's description, a

jury could reasonably conclude that while WD does not specifically charge its customers or patrons for each bag, a requirement to receive a "free" bag is that one must *first* be a "patron" or "customer" (i.e., buy groceries). This creates a fact issue as to whether an individual's receipt of a "free" grocery bag is *contingent* on the purchase of groceries such that the "free" grocery bag is, in actuality, part of the overall/total transaction for the sale of goods, such that it is part of the "contract for sale" by WD.

For instance, in Cain v. Sheraton Perimeter Park South Hotel, 592 So.2d 218 (Ala. 1991), the plaintiff, a lounge patron at a Sheraton Hotel, allegedly contracted hepatitis type A from consuming free, but contaminated, raw oysters. Cain sued for breach of implied warranty of merchantability and the Court held:

> The Sheraton and Woodlands argue that they cannot be held liable under § 7-2-314 because, they say, there was no "sale" by the Sheraton to Cain. Section 7-2-106(1) defines "sale" as the passing of title from the seller to the buyer for a price. Although the evidence shows that the Sheraton offered free oysters to patrons in the lounge, we cannot hold that the oysters were not "sold" within the meaning of the statute. Cain was a patron in the lounge, and the evidence shows that he had spent approximately $38.00 on drinks for himself and his business associates while he ate the oysters.....

Cain, 592 So.2d at 222. Thus, the Court recognized that under certain facts, "free" items given in conjunction with paid items are part of the total sale. Like Cain in the hotel lounge, Fuller was a "patron" in the WD store. Like Cain spending money on drinks in the lounge and then as a lounge patron receiving the free oysters, a jury could find that Fuller spent money on groceries at WD and then as a WD patron received the free bag. The rationale of Cain also appears applicable to the implied warranty of fitness, Section 7-2-315, as such is also premised on the existence of a "sale" and the status of WD as a "seller."[19]

---

[19] See also e.g. Levondsky v. Marina Assoc., 731 F. Supp. 1210, 1213 (D.C.N.J. 1990), in which plaintiff alleged breach of warranty for injuries sustained when a casino cocktail server gave him an alcoholic beverage free of charge and he swallowed chips from the rim of the glass in which the free beverage was served. The Court (Continued)

Moreover, Fuller argues that the "free" bag WD provided to her when she purchased the groceries was an "indispensible" or "integral" part of the overall sale of the groceries (the final or end stage of the "*total* transaction in goods"), as the court found for the needle in Skelton. Under Alabama's broad interpretation of a sale of goods, a jury could reasonably conclude that it is. Thus, there is sufficient evidence to establish the existence of an implied warranty.

WD did not specifically challenge Fuller's ability to establish a breach of the implied warranty or that damages proximately resulted from that breach. Nor did WD assert any other defenses to a claim of breach of implied warranty against a seller. Accordingly, WD's motion for summary judgment on this claim is **DENIED**.

III.    <u>Conclusion</u>

Based on the foregoing, it is **ORDERED** that WD's Motion for Summary Judgment

_____

concluded that the plaintiff:

> ….did not pay the cocktail server a specific amount of money for the drink in question, he was giving defendant his gambling patronage in return….It was not the intention of the framers of the Uniform Commercial Code to limit the birth of implied warranties to transactions which technically meet its definition of a sale[]"……Defendant argues that finding a sale in this instance, would unduly broaden liability under implied warranty provisions. Defendant uses the example of an art gallery serving free wine at an opening, and an accident resulting therefrom. This case, however, differs significantly from that example. A visitor to an art gallery opening is free to enter the gallery, view the art work, have some of the wine and leave without any payment whatsoever. In this case, the casino only serves drinks to patrons who have purchased gambling chips, and are gambling. Defendant also argues that serving free drinks is like offering free parking and restroom facilities, and that finding implied warranties for these services would be unduly burdensome. Free parking and restroom facilities, however, are purely services, and as services not subject to the implied warranty provision. A drink, on the other hand, is a good to be consumed by the gambling patron….

Cf. Neuhoff v. Marvin Lumber and Cedar Co., 370 F.3d 197 (1st Cir. 2004) (Gifts do not receive implied warranties under Article 2. Thus, where a company provided free replacement windows in place of deteriorated windows, this was more akin to a gift than a sale and there was not implied warranty on the windows. This was distinguished from the case of free goods given as part of a sale for a single price; here the replacement windows were not coupled with any other sale or transaction but were provided seven years after the original sale).

(Doc. 59) is **GRANTED in part** and **DENIED in part** as follows: **GRANTED** as to Fuller's claims for premises liability, wantonness, breach of express warranty and AEMLD; **GRANTED** as to negligence; **GRANTED** as to negligent supervision, training, and hiring; and **DENIED** as to breach of implied warranty.

It is further **ORDERED** that: 1) WD's motion to exclude experts is **GRANTED in part** and **MOOT in part** and Plaintiff's motion to amend is **MOOT;** 2) WD's motion to strike is **MOOT** as to the third-party beneficiary claim, and WD's Objections are **MOOT** as to "Exhibit 3", and **OVERRULED** as to "Exhibit 6"; and 3) Fuller's motion to strike is **DENIED**.

**DONE** and **ORDERED** this the **18th** day of **July 2017**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**